**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TAMMY DEES and DAKOTA BOLAND,

                       Plaintiffs,

-against-

T.L. CANNON CORP., d/b/a APPLEBEES, T.L. CANNON MANAGEMENT CORP.; TLC WEST, LLC; TLC CENTRAL, LLC; TLC UTICA, LLC; TLC EAST, LLC; and TLC NORTH, LLC;

                       Defendants.

**COMPLAINT**

JURY TRIAL DEMANDED

CASE NO.: 5:20-CV-1537 (BKS/ATB)

FLSA COLLECTIVE ACTION

And

CLASS ACTION

## **NATURE OF THE CASE**

1. T.L. Cannon Corporation (hereinafter "TL Cannon") owns and operates approximately 53 Applebee's Neighborhood Grill & Bar Restaurants throughout New York State.

2. In addition to TL Cannon, the other corporate entities named as a defendant in this action are affiliated and wholly owned subsidiary corporations of TL Cannon. These include but are not limited to: T.L. Cannon Management Corporation; TLC West LLC; TLC Central LLC; TLC Utica LLC; and TLC North LLC (hereinafter "TLC Companies").

3. As of the date of this Complaint, TL Cannon owns and operates 60 Applebee's Restaurants, 53 of which are located in New York with the remainder located in Connecticut and Pennsylvania.

4. Upon information and belief, TL Cannon's 60 Applebee's Restaurants makes it one of the largest franchise operators of Applebee's Restaurants in the United States.

5. Upon information and belief, TL Cannon utilizes the TLC Companies as administrative sub-units and payroll companies through which TL Cannon organizes and manages its various Applebee's restaurants based upon geographic location.

6. Ultimately, TL Cannon determines, manages, controls, and enforces all the terms and conditions of employment for all the named plaintiffs and similarly situated employees, making TL Cannon the ultimate employer of the Named Plaintiffs and similarly situated class members ("Plaintiffs").

7. Moreover, at all relevant times herein, TL Cannon was the owner of all the above-named TLC Companies through which it operated its Applebee's Restaurants.

8. The Named Plaintiff Dees has been employed by TL Cannon since October 2019.

9. The Named Plaintiff Boland has been employed by TL Canon since January 2020.

10. During all of Plaintiffs' employment, TL Cannon intentionally, repeatedly, and as a matter of corporate custom and policy, failed to adhere to numerous laws, codes, and regulations governing the payment of wages to Plaintiffs, both under New York State law and under the federal Fair Labor Standards Act ("FLSA").

*11.* Specifically, and as hereinafter alleged, TL Cannon failed to pay Plaintiffs and similarly situated employees wages and monies due them under both State and Federal law as required by the FLSA at 29 U.S.C. § 201, *et. seq.*, 29 CFR §§ 541 and 779, *et. seq.*, New York Labor Law Articles 6, 7, and 19, and 12 NYCRR §§ 137 and 142, *et seq.*

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. §§ 201-219 (FLSA); 28 U.S.C. § 1331 (Federal Question); 28 U.S.C. § 1337 (Acts of Congress regulating Commerce); and supplementary jurisdiction under 28 U.S.C. § 1367 (State Claims).

13. The Court has personal jurisdiction over the defendants pursuant to 28 U.S.C. § 1391(b) & (c).

14. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) and (c).

## PARTIES TO THIS ACTION

*The Named and Class Plaintiffs*

15. At all times materially relevant to this complaint, Named Plaintiff Tammy Dees has resided in Onondaga County, New York within the Northern District of New York.

16. Named Plaintiff Dees began working for TL Cannon in October 2019 at 628,

South Main Street, North Syracuse, NY 13212.

17. Named Plaintiff Dees was hired as a server, she but has been made to also perform cleaning and sanitation duties, car side prep duties and car food runner duties.

18. At all times materially relevant to this complaint, Named Plaintiff Dakota Boland has resided in Onondaga County, New York within the Northern District of New York.

19. Named Plaintiff Boland began working for TL Canon in January 2020 at 628, South Main Street, North Syracuse, NY 13212.

20. Named Plaintiff Boland was hired as a server, but he has been made to also perform cleaning and sanitation duties, car side prep duties and car food runner duties.

21. Named Plaintiffs' and the putative class members' (hereinafter "Plaintiffs") claims for relief are against TL Cannon and the TLC Companies for:

a. (First Claim) Failure to pay minimum of four hours or the number of hours in the regularly scheduled shift in violation of 12 NYCRR 142-2.3;

b. (Second Claim) Failure to provide required rest periods and to pay wages for all time worked in violation of NYLL;

c. (Third Claim) Failure to raise the hourly rate of pay from the "tip credit" minimum wage to the regular minimum wage when performing non-serving duties in violation of the FLSA.

d. (Fourth Claim) Failure to raise the hourly rate of pay from the "tip credit" minimum wage to the regular minimum wage when performing non-serving duties in violation of the NYLL.

e. (Fifth Claim) Failure to pay overtime wages for all time worked over 40 hours in a week in violation of the FLSA.

f. (Sixth Claim) Failure to pay overtime wages for all time worked over 40 hours in a week in violation of the NYLL.

## CLASS ALLEGATIONS

22. This action is properly maintainable as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and as a Class Action under Rule 23 of the Federal Rules of Civil Procedure.

23. The putative class is so numerous that joinder of all members is impracticable. The size of the putative class is believed to be hundreds of employees. In addition, the names of all potential members of the putative class are not known.

24. There are questions of law and fact common to each of the above-described classes that predominate over any questions affecting only individual members. Only the amount of individual damages sustained by each class member will vary.

25. The claims of the Named Plaintiffs are typical of the claims of each of the putative class members in that all of the members have been similarly affected by the acts and practices of the Defendants.

26. The Named Plaintiffs will fairly and adequately protect the interest of the members of the putative class, and their interests are not adverse to the interests of the other members of the putative class.

27. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy. The individual Named Plaintiffs and putative class action members lack the financial resources to adequately prosecute separate lawsuits against Defendants. A class action will also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to Defendants' policies.

*TL Cannon Corporation*

28. TL Cannon Corporation was incorporated in the State of Florida on March 7, 1990. It maintains corporate offices located at 220 Ponte Vedra Park Drive, Suite 100, Ponte Vedra Beach, Florida, 32082 ("Florida Offices").

29. TL Cannon is a private company.

30. TL Cannon obtained the exclusive franchise development rights for Applebee's

Neighborhood Grill & Bar Restaurants in New York State (excluding New York City) and most of Connecticut.

31. TL Cannon was registered to do business in the State of New York on June 27, 1990.

32. The TL Cannon Florida Offices are primarily responsible for payroll, accounts payable and financial processes for TL Cannon's Applebee's restaurants.

33. Additional corporate offices are located at 180 Lawrence Bell Drive, Suite 100, Williamsville, New York, 14221 ("New York Offices").

34. The TL Cannon New York Offices are primarily responsible for public and guest relations, construction, marketing, human resources, benefits, and purchasing for TL Cannon's Applebee's restaurants.

35. TL Cannon's first Applebee's Restaurant was opened on March 12, 1991 in Rochester, New York, and, upon information and belief, was directly operated by TL Cannon.

36. The Applebee's restaurants owned and operated by TL Cannon vary somewhat in size and dimensions, but, on average, the typical restaurant has between 37 and 50 tables and can serve between 160 and 225 guests at one time. On a typical high-volume night such as Friday night, the restaurant can turn over every table in the restaurant to new customers about once every hour.

*TL Cannon Management Corp. & TLC Companies*

37. Over the years, the number of TL Cannon owned and operated Applebee's has grown to 60 stores with 53 of those stores located in New York State as of the date of this complaint.

38. Upon information and belief, in order to more efficiently operate and manage the franchised Applebee's restaurants under TL Cannon's control, additional TLC Companies were

created to help organize, systematize, and streamline operations of the various individual restaurants.

39. Accordingly, T.L. Cannon Management Corporation (originally T.L. Cantina, Corp.) was founded and incorporated in the state of Florida on December 21, 1994.

40. T.L. Cannon Management Corporation has the same officers and is located at the same Florida and New York Offices as TL Cannon Corporation.

41. T.L. Cannon Management Corporation was registered to do business in the State of New York on February 6, 1997.

42. Upon information and belief, TL Cannon Management Corp. is the entity that directly employs the company's officers and upper level employees (employees who do not work in a specific Applebee's restaurant, such as Regional Directors of Operations – R.D.O.'s – and lower level D.O.'s).

43. Upon additional information and belief, TL Cannon Management Corp. is also the entity through which TL Cannon's various individual restaurants, including the setting and enforcement of company-wide policies, objectives, and goals.

*TL Cannon Corp. & TLC Companies*

44. As the size and number of TL Cannon's Applebee's Restaurants have grown over the years, it created various domestic limited liability companies registered in New York State to further organize TL Cannon's Applebee's Restaurants by "regions."

45. As such, the following wholly owned and controlled companies were created and incorporated in New York State as part of TL Cannon's corporate structure to organize, control, and manage TL Cannon's various New York State Applebee's restaurants:

    a. TLC Central, LLC, registered with the State of New York Dept. of State on June 3, 1998; and

      b.      TLC West, LLC, registered with the State of New York Dept. of State on June 3, 1998; and

      c.      TLC North, LLC, registered with the State of New York Dept. of State on May 17, 2004; and

      d.      TLC Utica, LLC, registered with the State of New York Dept. of State on October 16, 2006.

46.      To organize, control, and manage TL Cannon's Connecticut Restaurants, TLC East, LLC, was created and incorporated with the State of Connecticut's Department of State on June 5, 1998.

47.      Upon information and belief, the above referenced domestic LLC's provide a natural geographic organizational structure for TL Cannon's various Applebee's restaurants and are utilized as payroll companies for the employees of the individual stores located within the region's covered by the above named companies.

48.      For example, upon information and belief, payroll and other corporate operations for TL Cannon's Applebee's stores in Western New York are organized through TLC West, LLC, and all employees of those restaurants, both hourly and manager, receive paychecks issued under TLC West, LLC.

## FACTUAL BASIS FOR CLAIMS

<u>Hourly Employees</u>

49.      Since its initial founding in the early 1980's, the Applebee's concept has mostly operated within the "family dining" segment of the overall restaurant industry through franchise agreements between independent owner-operators and Applebee's International, Inc. ("AII").

50.      TL Cannon employs hourly personnel in specifically identified job codes and descriptions, which, upon information and belief, are also approved by AII as part of the standard model for operations of an Applebee's Restaurant.

51.      The individual job codes for TL Cannon's Applebee's Restaurants are roughly

organized into three generic departments: Back of the House Employees ("BOH"); Front of the House Employees ("FOH"); and Key Hourly Managers ("Key").

### BOH Employees

52. BOH Employees' various job codes depend on the specific work being performed. BOH employees include General Utility Dishwashers ("GU"), Prep Cooks ("Prep"), Line Cooks ("Line") and Expediters ("Expo").

53. All four of the BOH job positions are non-tipped hourly positions paid at or slightly above minimum wage.

### FOH Employees

54. Like BOH Employees, FOH employees' various job codes depend on the specific work being performed. FOH employees include: Host; Server; Bartender; and Carside ToGo ("Carside") employees.

55. Hosts and Carside employees, while they do receive nominal tips, are classified as non-tipped hourly employees and paid the New York minimum wage.

56. Servers and Bartenders are classified as tipped employees and are paid the applicable New York tipped employee minimum wage.

### Key Hourly Employees

57. Key employees are hourly employees scheduled to work regular "management" shifts when a particular store is either "short" a manager or it needs to cover a management shift for some reason.

58. Key employees are typically TL Cannon approved Line Cook or Server trainers who are promoted to be Key employees and given additional cross-training in other areas of the restaurant as well as in completing management paperwork.

59. Upon information and belief, most key employees can do anything a regular

"manager" can do.

### Named Plaintiffs' Experience

60.     Named Plaintiff Dees typically works approximately 20 to 35 hours per week.

61.     Named Plaintiff Dees would regularly arrive before the start of her shift and would immediately be asked to greet, seat and serve waiting customers 15 minutes *before* she clocked-in to begin her shift.

62.     Named Plaintiff Dees would regularly work a shift exceeding six hours and would not be provided a meal break as required by New York Labor Law. As a consequence, at the point of the shift when the meal break would be triggered, she would regularly be asked by her supervisor to clock-out but continue working to clean and close the restaurant. She was asked to clock-out so that she only worked six hours on the clock and no meal break violation appears to have occurred. However, a further consequence is that Named Plaintiff Dees would be working off the clock and not paid for all hours worked.

63.     Named Plaintiff Dees was a server and paid at the tip-credit minimum wage, below the regular minimum wage. However, Named Plaintiff Dees would regularly be asked to perform cleaning, sanitation, car side prep and car runner duties that are not tipped positions and are paid at the regular minimum wage, or higher. Named Plaintiff Dees spent a substantial amount of her time performing non-tipped server duties, especially when the restaurant was slow with seated customers.

64.     Named Plaintiff Dees was regularly scheduled to work a shift and informed she would be paid for a minimum of three hours. However, upon arriving and clocking in, Named Plaintiff Dees would often be asked to clock-out after only one-half hour of work and only be paid for that one-half hour.Named Plaintiff Boland typically works 20 hours per week. Earlier in his

employment, Named Plaintiff Boland regularly worked 40, 50, or 60 hours per week.

65. Throughout his employment, Named Plaintiff Boland has often been required to clock out and continue cleaning and assisting his co-workers. This off the clock work totals approximately two hours per week for which he is not paid his regular wages.

66. In weeks where Named Plaintiff Boland works over 40 hours, this off the clock work also resulted in unpaid overtime wages.

67. Throughout his employment, Named Plaintiff Boland has also witnessed the front of the house manager, as well as a Key Holder employee, clock out bartenders, servers, and to-go runners for half-hour breaks that were never taken.

68. Named Plaintiff Boland is a server and is paid at the tip-credit minimum wage, below the regular minimum wage. However, Named Plaintiff Boland is regularly asked to perform cleaning, sanitation, car side prep and car runner duties that are not tipped positions and are paid at the regular minimum wage, or higher. Named Plaintiff Boland spends a substantial amount of his time performing non-tipped server duties, especially when the restaurant is slow with seated customers.

69. Named Plaintiff Boland is regularly scheduled to work a shift and informed he would be paid for a minimum of three hours. However, upon arriving and clocking in, Named Plaintiff Boland is often be asked to clock-out after only one-half hour of work and is only paid for that one-half hour.

70. Named Plaintiffs witnessed the Defendants' above labor practices being carried out against their coworkers in the North Syracuse location. Named Plaintiffs believe the same or similar labor practices were carried out against those similarly situated hourly employees throughout Defendants' other locations.

**FIRST CLAIM FOR RELIEF**

**Failure to pay minimum of four hours or the number of hours
in the regularly scheduled shift in violation of 12 NYCRR 142-2.3**

71.     Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

72.     Under NYLL, Plaintiffs are entitled to be paid for a minimum of four hours or the number of hours in the regularly scheduled shift.

73.     Defendants have failed to pay Plaintiffs the required four hour minimum or number of hours in the employee's regular shift in violation of 12 NYCRR § 142-2.3.

74.     Upon information and belief, Defendants, including the individual Defendants herein, willfully, purposefully, and maliciously failed to pay the required compensation as articulated in this claim for relief.

75.     On this claim for relief, Plaintiffs request all equitable and injunctive relief available under NYLL barring Defendants from continuing to withhold the minimum number of hours to be paid from Named Plaintiff and/or all similarly situated employees, as well as the payment of all unpaid hours due under 12 NYCRR 142-2.3 and NYLL, and, where appropriate and permitted by law, liquidated damages, interest, and attorneys' fees in an amount to be determined by the Court.

SECOND CLAIM FOR RELIEF
**Rest Time and Failure to Pay Wages Under NYLL**

76.     Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

77.     Under NYLL, Plaintiffs are entitled to a half hour break when their scheduled shift exceeds six hours.

78. Even though Plaintiffs are entitled a half-hour rest breaks, Defendants failed to provide said breaks or pay Plaintiffs for all hours worked at the appropriate rate of pay as required under to NYLL §§ 190, *et seq*, 650, *et seq*, and, 19 NYCRR §§ 142, *et seq*.

79. As a consequence, at the point of the shift when the meal break would be triggered, Plaintiffs were asked to clock-out but continue working to clean and close the restaurant, so that no meal break violation would appear to have occurred.

80. As a result, Plaintiffs worked off the clock and were not paid for all hours worked.

81. Likewise, Plaintiffs were required to begin working prior to clocking in for their shifts.

82. Pursuant to Article Six of the NYLL, workers such as Named Plaintiff and those similarly situated are protected from wage underpayments and improper employment practices.

83. Pursuant to Labor Law § 191 and the cases interpreting same, workers such as Named Plaintiff and those similarly situated are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which the wages are earned."

84. Defendants failed to pay Named Plaintiff and members of the putative class their hourly wage for all hours worked in accordance with the agreed upon terms of their employment.

85. Unpaid time work includes, but is not limited to, time spent greeting, seating, and serving waiting customers 15 minutes before clocking in, and cleaning and closing up the restaurant after clocking out.

86. In failing to pay Named Plaintiff and those similarly situated proper wages for all hours worked, Defendant violated New York Labor Law.

87. Upon information and belief, Defendants, including the individual Defendants herein, willfully, purposefully, and maliciously failed to pay the required compensation or provided the required rest periods as articulated in this claim for relief.

88. On this claim for relief, Plaintiffs request all equitable and injunctive relief barring Defendants from continuing to refuse to provide Named Plaintiff and/or similarly situated hourly employees with required rest breaks, from continuing to refuse to pay for all hours worked, all of which plaintiffs and those similarly situated are entitled to under NYLL, and, where appropriate and permitted by law, for the payment of all unpaid regular work hours, liquidated damages, interest, and attorneys' fees in an amount to be determined by the Court.

### THIRD CLAIM FOR RELIEF
### Failure to Raise the Hourly Rate of Pay From the "Tip Credit" Minimum Wage to the Regular Minimum Wage When Performing Non-Serving Duties in Violation of the FLSA

89. Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

90. Plaintiffs bring this claim for relief pursuant to the FLSA.

91. Under the FLSA, Plaintiffs are entitled to have their hourly rate of pay raised from the tipped credit minimum wage to the appropriate regular minimum wage when clocked in as a server but spending a substantial portion of their time performing non-tipped duties.

92. Defendants failed to pay Plaintiffs at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

93. Defendants willfully, knowingly, purposefully, and recklessly failed to pay Plaintiffs the appropriate regular minimum wage during shifts in which they spent a substantial portion of their time performing non-tipped duties.

94. Defendants' policy and practice resulted in Plaintiffs not receiving proper minimum wages for all hours worked.

95. On this Claim for Relief, the Plaintiffs request the payment of the difference between the tip credit hourly rate of pay and the appropriate regular minimum wage for all hours

worked during shifts in which they spent a substantial portion of time performing non-tipped duties, such sums to be determined based upon an accounting of the hours worked and wages actually paid for Plaintiffs .

96.     Plaintiffs also seek an award of liquidated damages in the amount of 100% of the unpaid wages, plus attorneys' fees, interest, and costs as provided for by the FLSA.

**FOURTH CLAIM FOR RELIEF**
**Failure to Raise the Hourly Rate of Pay From the "Tip Credit" Minimum Wage to the Regular Minimum Wage When Performing Non-Serving Duties in Violation of the NYLL**

97.     Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

98.     Plaintiffs bring this claim for relief pursuant to the NYLL

99.     Under the NYLL , Plaintiffs are entitled to have their hourly rate of pay raised from the tipped credit minimum wage to the appropriate regular minimum wage when clocked in as a server but spending a substantial portion of their time performing non-tipped duties.

100.    Defendants failed to pay Plaintiffs at the applicable minimum hourly rate, in violation of NYLL §§ 652(1) and supporting regulations.

101.    Defendants willfully, knowingly, purposefully, and recklessly failed to pay Plaintiffs the appropriate regular minimum wage during shifts in which they spent a substantial portion of their time performing non-tipped duties.

102.    Defendants' policy and practice resulted in Plaintiffs not receiving proper minimum wages for all hours worked.

103.    On this Claim for Relief, the Plaintiffs request the payment of the difference between the tip credit hourly rate of pay and the appropriate regular minimum wage for all hours worked during shifts in which they spent a substantial portion of time performing non-tipped

duties, such sums to be determined based upon an accounting of the hours worked and wages actually paid for Plaintiffs .

103. Plaintiffs also seek an award of liquidated damages in the amount of 100% of the unpaid wages, plus attorneys' fees, interest, and costs as provided for by the NYLL

<b><u>FIFTH CLAIM FOR RELIEF</u></b><br><b>Unpaid Overtime Under FLSA</b>

105. Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

106. Plaintiffs bring this claim for relief pursuant to FLSA 29 U.S.C. § 201, et seq.

107. Under the FLSA, Plaintiffs are entitled to be compensated for all hours worked where such time is compensable time and is also subject to the overtime provisions of section 207 of the FLSA.

108. There were weeks when Plaintiffs worked more than forty (40) hours.

109. Plaintiffs did not receive all earned overtime compensation for hours worked after the first (40) in a week.

110. Plaintiffs frequently worked more hours than what they were paid for and had adjustments made to their time records resulting in a paycheck for less time than what the Plaintiffs actually worked and resulting in unpaid overtime wages.

111. Upon information and belief, Defendants, including the individual Defendants herein, willfully, purposefully, and maliciously failed to pay the required compensation as articulated in this claim for relief.

112. On this Claim for Relief, Plaintiffs request the payment of all unpaid overtime, such sums to be determined based upon an accounting of the hours worked and wages actually paid for Plaintiffs.

113. Plaintiffs also seek an award of liquidated damages in the amount of 100% of the unpaid overtime wages, plus attorneys' fees, interest, and costs as provided for by the FLSA.

### SIXTH CLAIM FOR RELIEF
**Unpaid Overtime Under NYLL**

114. Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

115. 12 NYCRR § 142-2.2 requires that "[a]n employer shall pay an employee for overtime at a wage rate of 1 ½ times the employee's regular rate" for hours worked in excess of 40 hours in one workweek.

116. NYLL § 663 provides that, "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any such underpayments, together with costs and such reasonable attorney's fees."

117. There were weeks when Plaintiffs worked more than forty (40) hours.

118. Plaintiffs did not receive all earned overtime compensation for hours worked after the first (40) in a week.

119. Plaintiffs frequently worked more hours than what they were paid for and had adjustments made to their time records resulting in a paycheck for less time than what the Plaintiffs actually worked and resulting in unpaid overtime wages.

120. Upon information and belief, Defendants, including the individual Defendants herein, willfully, purposefully, and maliciously failed to pay the required compensation as articulated in this claim for relief.

121. On this Claim for Relief, Plaintiffs request the payment of all unpaid overtime, such sums to be determined based upon an accounting of the hours worked and wages actually paid for Plaintiffs.

122.    Plaintiffs also seek an award of liquidated damages in the amount of 100% of the unpaid overtime wages, plus attorneys' fees, interest, and costs as provided for by the NYLL.

## DEMAND FOR TRIAL BY JURY

123.    Pursuant to Federal Rule of Civil Procedure 38, plaintiffs respectfully request a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, it is respectfully requested that this Court assume jurisdiction herein and thereafter Named Plaintiff demands a trial by jury and judgment against Defendants on behalf of themselves and those similarly situated as follows:

a.   On the First Claim for Relief, equitable and injunctive relief as well as payment of all monies owed for failure to pay a minimum of four hours or the number of hours in the regularly scheduled shift in violation of 12 NYCRR 142-2.3, as well as liquidated damages, and attorneys' fees in an amount to be determined at trial;

b.   On the Second Claim for Relief, equitable and injunctive relief as well as payment of all monies owed for failure to provide required rest periods and to pay regular time for all time worked in violation of NYLL, as well as liquidated damages, and attorneys' fees in an amount to be determined at trial;

c.   On the Third Claim for Relief, equitable and injunctive relief as well as payment of all monies owed for failure to pay the proper minimum wage for all time worked in violation of the FLSA, as well as liquidated damages, and attorneys' fees in an amount to be determined at trial;

d.   On the Fourth Claim for Relief, equitable and injunctive relief as well as payment of all monies owed for failure to pay the proper minimum wage for all time worked in violation of the NYLL, as well as liquidated damages, and attorneys' fees in an amount to be determined at trial.

e.   On the Fifth Claim for Relief, equitable and injunctive relief as well as payment of all monies owed for the failure to pay overtime for all hours worked over 40 in a week in violation of the FLSA, as well as liquidated damages, and attorneys' fees in an amount to be determined at trial;

f.   On the Sixth Claim for Relief, equitable and injunctive relief as well as payment of all monies owed for the failure to pay overtime for all hours

worked over 40 in a week in violation of the NYLL, as well as liquidated damages, and attorneys' fees in an amount to be determined at trial.

Dated:  December 10, 2020

>VIRGINIA & AMBINDER, LLP
>
>By: _____/s/_____
>James Emmet Murphy, Esq.
>40 Broad Street, 7th Floor
>New York, New York 10004
>jmurphy@vandallp.com
>Tel:   (212) 943-9080
>Fax:   (212) 943-9082
>
>And
>
>GATTUSO & CIOTOLI, PLLC
>Frank S. Gattuso, Esq.
>The White House
>7030 E. Genesee Street
>Fayetteville, New York
>315-314-8000
>fgattuso@gclawoffice.com
>
>*Attorneys for the Plaintiff and putative class*